**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ISHAIAH BROWN, | : | |
| | : | Civil Action No. 07-1643 (RBK) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GARY MERLINE, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Ishaiah Brown, #140796
Atlantic County Justice Facility
5060 Atlantic Avenue
Mays Landing, NJ 08330

**KUGLER**, District Judge

Plaintiff Ishaiah Brown, a prisoner confined at Atlantic County Justice Facility in Mays Landing, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff states that from April 17, 2006 until September 3, 2006, while housed at the Atlantic County Justice Facility, he was forced to sleep on the floor of a cell, sometimes with his head near a toilet, due to overcrowded conditions at the jail. Plaintiff states that there are two pods, meant to hold 32 inmates, but that there are as many as 60 to 70 inmates housed in these pods.

Due to the overcrowding, Plaintiff refused to be housed in the cells, and was placed in lock up from September 3, 2006 until the present. In lock up, Plaintiff must stay in his cell for 72 hours, and only is allowed out for 15 minute showers. The Court notes, however, that Plaintiff refers to a date in March of 2007, when Plaintiff "was let out of [his] cell for [his] 1 hour of recreation."

Plaintiff also states that on two occasions he slipped and fell on a puddle of water caused from a leak in the ceiling, causing injuries to his neck, back, and elbow. Plaintiff states that the leak should have been fixed. Plaintiff notes that due

to his injuries he was housed on a lower tier, but was later moved to an upper tier. When Plaintiff asked for help in moving to the upper tier, he was placed in a "bodywrap" for two hours.

Plaintiff complains that he is being treated unfairly and prejudicially for refusing to go to the general population. He states that having to sleep on the floor next to the toilet is unsanitary, and that he should not have been placed in the "bodywrap" restraint.

Plaintiff seeks compensatory damages and injunctive relief.

## DISCUSSION

**A.   Standard for Sua Sponte Dismissal**

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and

all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. See Alston v. Parker, 363 F.3d 229 (3d Cir. 2004); Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

**B.   Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State

> or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.   Claims Against the State of New Jersey and Justice Facility**

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in

5

federal court regardless of the type of relief sought.  See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility , 726 F. Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976); see also Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under § 1983); McCoy

v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-94 (E.D. Va. 1992) (local jail not a "person" under § 1983).  Thus, all claims against the State of New Jersey and the Atlantic County Jail Facility must be dismissed with prejudice.

**D.    Claims Against County/Municipality**

Plaintiff names Atlantic County and the City of Mays Landing as defendants.  However, to establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury.  Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
>     There are three situations where acts of a government employee may be deemed to be the result of a

7

> policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

In this case, Plaintiff fails to allege any facts suggesting a policy or custom that would cause the County of Atlantic County or City of Mays Landing to bear liability.

**E.   Conditions of Confinement**

    1.   Eighth and Fourteenth Amendment Standards

Plaintiff does not state whether he is a pre-trial detainee, a convicted but unsentenced prisoner, or a sentenced prisoner.

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment. See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v.

8

Wolfish, 441 U.S. 520 (1979).  See Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention

9

facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  Bell, 441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  See id. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  See id. at 539 n.20, 561-62.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal

civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. See Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of an Eighth Amendment conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. See id. at

11

347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

    2.   Overcrowding

Under either standard, overcrowding in a prison setting is not itself a violation of the Constitution. See Rhodes, 452 U.S. at 347-48 (double-celling is not per se cruel and unusual punishment); Bell v. Wolfish, 441 U.S. 520 (double-celling pre-trial detainees for short periods does not constitute punishment under Due Process Clause). Overcrowding may constitute cruel and unusual punishment when it leads "to deprivations of essential food, medical care, or sanitation," or when it causes an "increase [in] violence among inmates or create[s] other conditions intolerable for prison confinement." See Rhodes, 452 U.S. at 348; Nami v. Fauver, 82 F.3d 63, 66-67 (3d Cir. 1996); Tillery v. Owens, 907 F.2d 418 (3d Cir. 1990).

Indeed, the Court of Appeals for the Third Circuit has implied that double-celling is constitutionally permissible only if used in exigent circumstances for extremely brief periods of time. See Newkirk v. Sheers, 834 F. Supp. 772, 782 (E.D. Pa.

12

1993)(citing <u>Union County Jail Inmates v. DiBuono</u>, 713 F.2d 984, 994, 996-97 (3d Cir. 1983))(other citations omitted).

In this case, Plaintiff asserts that urine sometimes splashes on his face from the toilet, creating an unsanitary condition. Thus, not only has Plaintiff alleged that double-bunking occurred for at least a period of four months when he was housed in the general population, but also, has created an unsanitary condition. Plaintiff has indicated facts sufficient to withstand dismissal of this claim at this early point in litigation. <u>See</u> <u>Alston v. Parker</u>, 363 F.3d 229, 233 n.6 (3d Cir. 2004)(stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

    3.   <u>Slip and Fall</u>

Plaintiff has not alleged facts indicating that his constitutional rights have been violated due to his slip and fall accidents. Indeed, Plaintiff states that he "ran to his cell" located on the top tier, "tried to stop," and "slipped in a puddle" caused by a leak. Thus, Plaintiff alleges only that negligence in failing to repair the leaking ceiling caused a puddle to form on the floor and that he slipped in the puddle. Plaintiff has alleged no facts to suggest either that the leaky ceiling and puddle deprived him of the minimal civilized measure

of life's necessities or that the defendants knew of the substandard conditions and acted or failed to act with deliberate indifference to a substantial risk of harm to inmate safety.  See Byard v. Merline, 2006 WL 3350464 at *4 (D.N.J. Nov. 14, 2006) (Slip Copy).

    4.   Bodywrap

Plaintiff makes clear from his complaint that he was restrained in the bodywrap apparatus for two hours after refusing to proceed to his top tier housing assignment.  Here, Plaintiff fails to allege facts indicating a constitutional violation, as Plaintiff admits that the apparatus was used for disciplinary purposes, for a limited time period.  Plaintiff has not demonstrated deliberate indifference on the part of the facility staff.  See Fuentes v. Wagner, 206 F.3d 335, 345-46 (3d Cir. 2000)(finding that placing inmate in restraint chair for eight hours violated neither the Eighth nor Fourteenth Amendments because defendants did not act "maliciously or sadistically to cause harm," but at most, "overreacted" to the situation).

### CONCLUSION

For the reasons set forth above, the complaint will be dismissed as against defendants State of New Jersey, County of Atlantic County, City of Mays Landing, and Gerard L. Gormley Justice Facility.  Plaintiff's claims concerning overcrowding will be permitted to proceed.  Plaintiff's remaining claims must

be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.[1]  If Plaintiff can correct the deficiencies of his Complaint, he may file a motion amend the complaint as to his dismissed claims.  Any such motion should be accompanied by a proposed Amended Complaint.[2]  An appropriate order follows.

                                            S/Robert B. Kugler
                                            ROBERT B. KUGLER
                                            United States District Judge

Dated: June 18, 2007

---

[1] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to amend his complaint in accordance with the court rules.

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.